**In re DIAMOND T CORPORATION, d/b/a Diamond T Western Wear, Debtor.**

**Bankruptcy No. 5–85–00623.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

March 30, 1988.

Martin Seidler, San Antonio, Tex., for debtor.

Lawrence A. Beck, San Antonio, Tex., for creditor's committee.

Randolph N. Osherow, San Antonio, Tex., trustee.

### OPINION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

At San Antonio, Texas on the 25th day of August, 1987, came on for hearing the Sixth Amended Application of John C. Calhoun & Company ("Calhoun") for Interim Compensation. After consideration of the evidence and of the arguments of counsel the Court finds that the Application should be approved in part and denied in part.

Calhoun has substantial experience in bankruptcy matters, being the accountant of choice for one of the more active local bankruptcy practitioners. The firm therefore also has considerable familiarity with the vagaries of compensation for professionals in bankruptcy. Notwithstanding that familiarity, Calhoun's application is skimpy in its detail of services rendered.[1] Only by extrapolation can billing rates be divined. Nowhere are the professionals rendering the services identified. "D. Palmer" for example might be a bookkeeper, a staff accountant, a manager, or partner. Without identification, the Court cannot tell whether Palmer's billing rate is appropriate or whether the time Palmer

---

**1.** Here is an example of a series of entries:

spent on a given task is reasonable given his (or her) experience level.[2]

Even were the court to presume that the experience level of the professionals approximates their billing rate, and were the court to overlook the cursory descriptions of services performed relative to the time spent, the application runs into other problems. Too much time has been spent for relatively routine matters such as the preparation of monthly operating reports, and too many professionals are involved in rendering those services. Usually, at least two and often as many as four persons are charging the estate for the preparation of a single month's operating report. This court will be quick to acknowledge that the current operating report requires some time to complete. However, the report was designed by an accountant and should not pose any peculiar difficulty for other accountants, especially those routinely retained in bankruptcy cases. By way of example, however, the February 1987 report required the services of two professionals, billing 13¼ hours of professional time to the estate, at a cost of $579.75. The May 1987 report had *three* professionals billing the estate, running up a tab of $951.50. The Trustee has candidly admitted that this estate was a failure as a reorganization. It has proven to be a windfall for the accountants, however, who have thus far succeeded in convincing previous judges to approve $33,000 worth of fees. The fourteen months' worth of operating reports filed for the period covered by this fee application will cost the estate approximately $9,300, or about $660 per report. It is difficult to conceive of this cost as a benefit to the estate, no matter how "informative" the monthly reports might have been. The futility of assessing these charges against the estate is underscored by the poor results achieved in the case.

It has been frequently observed that courts should be especially cautious in applying the "results achieved" standard when evaluating professional fees in bankruptcy, lest courts discourage zealous pursuit of bankruptcy goals by the persons most likely to achieve those aims by virtue of their experience in the area, especially in view of the high risk associated with working for bankruptcy estates. The standard is nonetheless a valid one in the present context. One of the services which Calhoun purported to offer the estate was denominated "management advisory services" in the Application. These services are different from accounting, though are a recognized service offered by certified public accountants, according to John Calhoun's testimony. In essence, the accountant performing such services takes raw

| Description | Date | Name | Hours | Fees |
|---|---|---|---|---|
| Preparation of adjusted trial balance in order to prepare bankruptcy report for May, 1987 | 6/17 | J. Hartmann | 4 ½ | 130.50 |
| | 6/18 | J. Hartmann | 7 ½ | 217.50 |
| | 6/19 | J. Hartmann | 5 ½ | 159.50 |
| | 6/17 | R. Merrill | 1 | 39.00 |
| | 6/18 | R. Merrill | 3 | 117.00 |
| | 6/19 | R. Merrill | 2 | 78.00 |
| | 6/19 | P. Guzzardo | ½ | 30.00 |
| | 6/23 | P. Guzzardo | 3 | 180.00 |
| Court appearance in order to testify or answer queries in connection with injunction | 6/23 | D. Palmer | ½ | 30.00 |
| | 6/24 | D. Palmer | 5 | 300.00 |
| | | | 32 ½ | 1,281.50 |

**2.** Despite these deficiencies, the application still contains more detail than the typical application submitted by accountants that this Court has reviewed to date, an observation that serves less to exonerate Calhoun than to indict the rest of the accounting profession.

financial information, explains the results to his client, assists his client in tax planning, makes suggestions based on the data for changes in the company's operations, suggests changes in the company's buying characteristics, and finally helps the client to implement those changes deemed necessary. The accountant acts as a business consultant, intimately involved in the operation, experimenting with strategies for turning things around.

The estate is being billed $2,880 for such services performed primarily by Mr. Calhoun. If this Court is to take Mr. Calhoun at his word, then clearly he, perhaps more than anyone, had his finger on the pulse of the patient and was in the best position to evaluate the financial health of the debtor and its prospects for recovery. Calhoun also spent considerable time assisting the debtor in preparing a disclosure statement, lending further credence to the inference that Calhoun knew or should have known what was going on with this debtor. The evidence before the court is also clear that this company suffered "regular losses" and that the outcome of the reorganization effort was "lousy." Given Calhoun's intimate knowledge of the financial condition of the debtor, he had no business permitting his firm to continue running up monthly charges averaging in excess of $660 for the preparation of monthly operating reports.

The management advisory services are themselves a suspect charge. As helpful as they might have been (though the results achieved indicate to the contrary), they seem to have far exceeded the services which this Court could reasonably have anticipated the accountants would perform when first the Court authorized their retention. Had the estate felt it appropriate to retain a management consultant, an appropriate request could have been submitted to the Court. If the estate wished to expand the duties of its accountants, it could similarly have advised the Court. The problem is not that such services are beyond the ken of an accountant, for they evidently are not. Many attorneys are similarly qualified to act as business or management consultants. Court approval of an estate's retention of counsel *qua* counsel does not justify counsel's later billing the estate for management consultant services. The fees are especially suspicious in this particular case, as Calhoun has been the debtor's accountant since 1979. One strongly suspects that Calhoun never charged for similar "services" before the bankruptcy was filed, instead meeting with his client and friend regularly to go over how things were going and advising him to try this or abandon that course of action.

The billing rate of the accountant professionals offers one of the few bright lights in this otherwise gloomy application. John Calhoun, the senior accountant and owner of the firm, bills out his time at $80.00 an hour. His is the highest billing rate amongst all the professionals. Other rates range from $30.00 an hour through $65.00 an hour.

Time spent on preparation of the disclosure statement is more easily compensable, as the requirements of the Court for precise data and detail in disclosure statements makes accurate and complete accounting information essential. It appears that some of the time spent on this general area was devoted to tactics, options-testing, and experimentation, areas not typically associated with the usual "number-crunching" activities of accountants. The preparation of a disclosure statement, however, is one of the most critical activities engaged in by a debtor seeking to reorganize. Here he pulls together all of his resources—his consultants, his professionals, his principals—and calls upon their mutual and admixed skills to assemble his financial salvation. At the same time, the task is fraught with risk. While time and talent can be wasted here as easily as at any other point in a case, the very nature of a chapter 11 proceeding demands that the most effort be concentrated on this task. The Court is compelled to keep these considerations in mind when evaluating the time spent on preparation of plans and disclosure statements, and has done so in this case. However, the Court also notes that Calhoun has been the debtor's accountant since 1979, long before filing.

Based upon the foregoing, the Court finds that the fees for preparation of monthly operating reports will be allowed only to an average of $200.00 per month, for a total of $2,800.00. The management advisory fees will be disallowed in their entirety. The fees associated with preparation of the disclosure statement will be discounted by one-third. The balance of the fees requested will be allowed as an interim fee.

The Court notes that this proceeding has been converted to a chapter 7 case. As a result, these fees, incurred as they were during the chapter 11 case, are subordinate in priority to the chapter 7 case administration costs and expenses. The estate is excused from actually paying these fees at this time pending further orders of this Court. The allowance of these fees is an interim allowance and is without prejudice to further review and objection by the chapter 7 trustee preliminary to the entry of a final award. Insofar as fees have been disallowed in this application, however, they are disallowed with prejudice.

It is therefore ORDERED, ADJUDGED, and DECREED that the Amended Sixth Application of John C. Calhoun & Associates for Interim Compensation be and the same is hereby allowed in the amount of $6,024.92. The balance requested is hereby disallowed with prejudice. It is further ORDERED that Trustee is excused from paying the interim fee here awarded pending further orders of this Court.